DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

CYNTHIA STIER (DCBN 423256)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7000
    Facsimile: (415) 436-7009
    Email: cynthia.stier@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ALEX MILLER,<br><br>    Defendant. | No. 15-CR-00127-010 EDJ<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date:  February 1, 2021<br>Time:  1:30 p.m.<br>Judge: Edward J. Davila |

I.    INTRODUCTION

Alex Miller will be sentenced by the Court on February 1, 2021 following his guilty plea to Counts Three and Ten of the Superseding Indictment, charging him with a violation of 21 U.S.C. § 846 – Conspiracy to Possess with Intent to Distribute Controlled Substances, and 18 U.S.C. § 1347 - Health Care Fraud.

1

The government is in agreement with the description of the offense conduct in the Presentence Report ("PSR"), the Guidelines calculation, and the advisory Guidelines range. The government recommends that the Court impose a sentence that takes into consideration the seriousness of the offense, and the factors set forth in 18 U.S.C. § 3553(a).  The government declines to make a specific sentencing recommendation in this case.

II.   THE GOVERNMENT REQUESTS THAT THE COURT IMPOSE A SENTENCE THAT BALANCES ALL OF THE 3553(A) FACTORS

The Court should impose a sentence that is sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008). As the Ninth Circuit has held, Courts should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. Id. The Sentencing Guidelines are "the 'starting point and the initial benchmark,'" United States v. Kimbrough, 552 U.S. 85, 108 (2007) (quoting United States v. Gall, 552 U.S. 38, 49 (2007)), and are to be kept in mind "throughout the sentencing process." *Gall*, 552 U.S. at 50, n. 6. As noted by the Ninth Circuit, the Supreme Court has "clarified that we may attach a presumption of reasonableness to sentences falling within the Guidelines range." United States v. Saeteurn, 504 F.3d 1175, 1178 (9th Cir. 2007) (emphasis added). After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Here, the defendant has a total Offense Level of 21 and a CHC of V. The Sentencing Guidelines place the "starting point" at 70-87 months.

Beyond the Guidelines, under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for defendant, the Court should consider these factors, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence imposed to protect the public from further crimes of the defendant;

(5) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

A. Offense Conduct and Defendant's Circumstances

With respect the nature and circumstances of the offense, the defendant was charged in 2 counts of a superseding indictment along with 17 co-defendants. PSR ¶ 2-19. Two of the co-defendants are defendant's ex-wife Danielle Miller, and his brother, Angelo Miller. PSR ¶ 57. Out of the defendants charged, only Dr. Leong was sentenced to custody thus far. Dr. Leong provided the illegal prescriptions for oxycodone and hydrocodone in exchange for a fee. These prescriptions had no legitimate medical purpose. PSR ¶ 44

The defendant provided Dr. Leong with names and money in exchange for illegal prescriptions. PSR ¶ 57. Defendant obtained 64,460 pills from Dr. Leong, and sold many of these drugs. PSR ¶ 59. Defendant used his Medi-Cal benefits to pay for some of these prescriptions. PSR ¶ 63.

It is indisputable that the defendant was living with an untreated drug addiction for many years, resulting in self-medication, and that he made a decision to make money in a dishonest and criminal manner to support his addiction and financial needs. When the defendant learned of the charges, he fled and remained a fugitive for 3 years. Since his arrest, he has demonstrated an interest in becoming sober which is most evident from his recent completion of a residential substance abuse treatment program at

Center Point and six months of sobriety. The question is whether that is enough to evidence a path of rehabilitation.

Defendant's history shows the onset of substance abuse at an early age and parents who were unable to provide the parental guidance necessary the defendant needed to prosper. Significantly, the defendant was deprived of an education when his parents failed to enroll him in school after he completed sixth grade. Defendant became addicted to drugs, and predictably turned to crime to support his addiction, as well as his daily needs.

Defendant's criminal history appears to be directly linked to his addiction. It includes 4 prior adult convictions, a misdemeanor Grand Theft; three Counts of felony Grand Theft, felony Vehicle Collusion Fraud, Grand Theft Labor, and Present False Insurance Claim with an Enhancement for Aggravated White Collar Crime; and felony Possess for Sale/Purchase Sale of Controlled Substance, for which he was under a criminal justice sentence at the time he committed the instant federal offense. Accordingly, he is a Criminal History Category V.

 B.   The need to afford deterrence and protect the public.

Defendant is a long term addict, unemployed, and has a significant criminal history. He has six months of sobriety after a period of several years which included residential treatment. He presents a moderate risk of recidivism based on his history of addiction, relapse and unemployment.

After pleading guilty in this case, defendant was referred to the Alternatives to Incarceration Program (ATIP) to provide him the opportunity to show his commitment to sobriety, and to attain the stability that comes from employment, stable housing, individual and group therapy, and a sober support network. Unfortunately, Defendant was unable to complete ATIP and to achieve most of those goals.

The benchmarks this court has to consider in crafting a sentence that deters future criminal conduct and protects the public from future criminal activity, is the completion of residential treatment at Center Point, a 6 month period of sobriety, and a continuing history of unemployment.

Defendant's unemployment presents a significant risk of recidivism. Defendant showed his ability to maintain stable employment for a short time while in ATIP, however, it does not appear that he sought subsequent employment and his source of financial support is unknown. This is of concern. As noted in the PSR, the defendant continues to present a moderate risk to recidivate based on his history of unemployment, his repeated drug use while in ATIP, his unwillingness to be forthcoming with the ATIP team, and his disregard for the Court's orders, specifically his decision to remove GPS equipment despite the court order. PSR Justification Section, p. 4 ¶ 2.

Because his conviction suggests distribution of drugs for money, defendant's current lack of employment makes it difficult to see a path forward that protects the public, and deters the defendant from illegal activity.

The government does not suggest that defendant's six months of sobriety is not a significant achievement. However, it is one factor to consider for a defendant who has been to two residential treatment centers during the pendency of this case, and has experienced significant setbacks in relapses, unemployment, and violations.

It is unfortunate that the Defendant was introduced to Dr. Leong, who was willing to write illegal prescriptions for money. This relationship resulted in the instant charge but that charge also provided the defendant with an opportunity to change the trajectory of his life. Although only time will tell if he had done so, his continuing lack of employment and short term sobriety make it difficult to suggest significant rehabilitation.

C. Co-defendants' sentences

The sentencing of co-defendants should be considered pursuant to 18 U.S.C. § 3553(a)(6) "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Defendant's co-defendants, with the exception of Dr. Leong, have received

noncustodial sentences.  The number of pills received by Miller, although significant, is less than what was received by co-defendants.  PSR Justification Section, p. 4 ¶ 2.

III.     CONCLUSION

This case presents the Court with the difficult task of weighing the history and characteristics of the Defendant against his shaky rehabilitation success with the goal of crafting the right sentence to ensure that the public is protected from future crimes.   The government declines to make a sentencing recommendation in this case and opts to point out the factors it considers significant to this Court's determination of an appropriate sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing.

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

 /s/ Cynthia Stier
CYNTHIA STIER
Assistant United States Attorney